Kurt David Hermansen, CA Bar No. 166349
Supervisory Assistant Federal Public Defender
859 Willamette Street, Suite 200
Eugene, Oregon 97401
(541) 465-6937 Telephone
(541) 465-6975 Facsimile
Kurt_Hermansen@fd.org

Attorney for Defendant

# UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br>　　　　　　　　　Plaintiff, <br><br>　　v. <br><br> BENJAMIN VICTOR HOUGHTON, <br><br>　　　　　　　　　Defendant. | CASE NO. 6:23-CR-00065-MC <br><br> **DEFENDANT'S SENTENCING MEMORANDUM** <br><br> Sentencing: June 3, 2025 at 1:30 PM |

　　　　Benjamin Victor Houghton is scheduled to appear for sentencing for the offenses of sexual exploitation of a child, in violation of 18 U.S.C. § 2251(a) and (e), and aggravated sexual abuse, in violation of 18 U.S.C. § 2241(c). The USAO and defendant will jointly recommend a 495-month period of incarceration with credit for time served to run fully concurrent with Lane County Circuit Court Case No. 24CR31533. The government will also recommend that Mr. Houghton be on lifetime supervision following his sentence. Mr. Houghton stipulates that a 10-year period of supervised release is adequate given his age at the time of his release and the length of sentence imposed. This sentence is sufficient but not greater than necessary to further the goals of sentencing outlined

Page 1 – Defendant's Sentencing Memorandum

in 18 U.S.C. § 3553(a), especially given the substantial length of the stipulated sentence and given Mr. Houghton's autism spectrum disorder (ASD) diagnosis.

The following excerpt encapsulates how the prison experience is harder for people with ASD:

- People with ASD often exhibit behaviors, such as problems with social interaction with others and repeated actions or body movements.

- Defendants with ASD often struggled with bullying, social exclusion, and isolation as children.

- Prison challenges can include the dining hall, prison uniforms, and other factors.

In *Autism and the Prison Experience*, in the American Bar Association's Criminal Justice Magazine, the authors state:

> The prison experience is not equal for those who serve a term of incarceration. Those who face the most challenges are the defendants who have cooperated with law enforcement; those who have sex-related offenses, specifically, child pornography charges; and those with mental illness or neurological and developmental disorders, such as Autism Spectrum Disorder (ASD). In our work, we continue to see more and more combinations of these factors. Our primary role when assisting with these types of cases is to provide the court information about how a term of incarceration will be much more difficult for someone with ASD. While our professional experiences have been exclusively within the Bureau of Prisons (BOP), the issues an ASD defendant will experience apply to all levels of incarceration, to include federal and state prison environments and local and county jails.
>
> ASD is a disorder that is oftentimes undiagnosed. Should you have a client who exhibits the following behaviors, a clinical intervention for diagnosis may be helpful. Those with ASD often exhibit behaviors such as:
>
> ☐ Problems with social interaction with others.

Page 2 – Defendant's Sentencing Memorandum

- ☐ Unusual interest in objects.
- ☐ Need for sameness.
- ☐ Great variation in abilities.
- ☐ Under- or overreaction to one or more of the five senses: sight, touch, taste, smell, or hearing.
- ☐ Repeated actions or body movements.

Parents of ASD defendants often tell of the struggles their child overcame during life including bullying, social exclusion, and isolation. Many found comfort and comraderies from an early age in an almost virtual life on the computer. Sometimes this virtual life crosses over to criminal activity. When formal criminal charges result, a sentence of imprisonment becomes a possibility. When the likelihood of incarceration becomes imminent, the legal team may want to consider options for mitigating the term of imprisonment for the client by providing the court with an understanding of how individuals with ASD will serve a significantly harsher sentence than similarly situated neurotypical offenders.

Defendants and their families often tell us of the anxiety that came with attendance at preschool and kindergarten. Their child was terrified of loud environments, and schools are loud by nature. Not only were they terrified of noisy places, but they were also prone to react at the sudden sound of laughter or loud voices. Some children would burst into tears, and it was very difficult for them to regain focus.

Tactile senses can be a particular challenge for some individuals with ASD. Certain shoes or clothing is preferred and, in some cases, only certain clothing fabric that had been washed numerous times could be tolerated. The clipping of tags off shirts, the inability to tolerate closed shoes—all became challenges for parents who wanted nothing more than to give their child a higher quality of life.

We also noted issues with food. For instance, food had to be plated in such a way that the offerings could not touch one another. The food that their children would eat, which was limited anyway, was further screened by its texture, temperature, and preferred name brand. Taste of foods was such a challenge that some of our cases involved such sensitivities to flavor that finding a suitable toothpaste was a challenge.

Light sensitivities were also common among those with ASD. Sudden bright lights can be unusually startling. Light was an over-

stimulant, and bright overhead fluorescent lighting made it difficult for their child to stay on task, especially in school.

As one parent told us, "We learned early in his life a very structured day suited him; however, if his structured day was interrupted or suddenly changed, it could be very traumatic to him. Typically, he is very rule-bound when the rules are clearly defined, but he displayed difficulty with nuance, sarcasm, and unwritten rules. As he grew older, the social awkwardness became very apparent. He was an over-talker, focused on fixed topics, and his siblings and peers would lose interest in what he was saying and exit the conversation. He is extremely intelligent and very verbal."

One can imagine the trauma of the family when their now-grown son, who has the maturity of a young adolescent, is facing a potential federal prison sentence. While therapist expertise is critical for educating the court about ASD, and specifically how the client is affected, it has been our job to present in a declaration, the difficulties and unequal experience a defendant with ASD will encounter when navigating federal prison. Prison, for any individual, is difficult, but for those with ASD, it can be torturous.

A prison setting is jarring, anxiety-producing, and uncomfortable and few, if any, accommodations are made for incarcerated ASD offenders, regardless of requirements by the Americans with Disabilities Act. During our careers with the BOP, we cannot recall a single incident wherein an accommodation was made for such an offender.

Other than BOP psychologists, who typically do not have regular encounters with every inmate, the Agency has no screening tools for ASD. Typically, the staff member who conducts an initial intake screening when an offender arrives at a prison is either a case manager, a correctional counselor (no clinical background), or a shift lieutenant. The BOP does not provide any training, whether it be periodic or annually, to equip employees with tools for understanding and dealing with this population or to assist with management decisions.

Four out of five diagnosed individuals with ASD are male. The population of ASD offenders that are incarcerated is twice that of those in the general population of society. These individuals are more likely to become involved with the criminal justice system and equally more likely to face incarceration.

For an ASD offender, the myriad of stimuli that are presented in almost every facet of prison is overwhelming. Prisons are quite loud.

Page 4 – Defendant's Sentencing Memorandum

Inmates shouting to one another is a reality, whether it is just normal interactions or hostile altercations. Staff shout orders to be followed. If an ASD offender is having difficulty processing the abrupt sounds of shouting, laughter, the voice of an angry person, or bright lights, they may become management concerns if they cannot follow basic orders from staff or are triggered by loud conversations.

For many individuals with ASD, being touched by others is extremely upsetting. Prison requires unannounced pat-down searches as well as many that are routine, such as when returning to a unit following an activity. Inmates are often crowded into areas, such as cells, chow halls, or elevators. Some ASD individuals are triggered to abnormal reactions by being near others. This would be a constant challenge for an ASD offender.

A prison dining hall may be one of the hardest obstacles for an ASD offender. It has a lot of stimulation. There are loud, bright lights and lots of loud voices, and uniforms are required to be worn—and now combine all of that with food aversions and smells. Typically, inmates working in food service serve food to their peer inmates, cafeteria style. There will be no accommodations for food preferences or food placement on a tray. Other inmates will likely bully an ASD offender, and any of their sensitivity issues will be preyed upon, as is the nature of many inmates.

Prison uniforms are often ill-fitted, uncomfortable, stiff clothing. Steel-toed boots are required in work settings, and for some ASD offenders, this could be nearly paralyzing if they are forced to wear them. But how does a prison administration make exceptions for one and not others, especially if ASD is undiagnosed? While there are two formal BOP programs that exist to help offenders with ASD, they are isolated and not that specific to ASD offenders' needs. This formal program, called Skills, is only available at FCI Coleman, Florida (Medium), and FCI Danbury, Connecticut (Low). For many defendants, who typically have very close family ties, this means a difficult decision of asking for a designation far from home just to have some minimal accommodation for ASD.

Many people with ASD have never been formally diagnosed. They characteristically fit many of the criteria mentioned and have done their best to adapt in their lives. Some navigate with success, while others flounder and stick out like sore thumbs when overwhelmed. ASD individuals are usually more vulnerable than their non-ASD peers regardless of being incarcerated. ASD offenders are easy prey to pranks, bullying, and being defrauded. In a prison setting, offenders with ASD are not only subjected to being bullied and potentially

Page 5 – Defendant's Sentencing Memorandum

extorted, but they are also subjected to being ostracized by peers because of their unusual behaviors, tics, and social awkwardness.

The inability to discern sarcasm, nuanced conversation, and mixed messages could lead an ASD offender into dangerous situations. In prison, there are two sets of rules, the formal written rules established by the institution and the unwritten rules established by the inmates. Survival in prison is contingent upon understanding, adapting, and abiding by both sets of rules. Many ASD individuals are described as rigid "rule followers" when the rules are clearly established. The unwritten rules established by inmates are not clearly defined. Most of us would interpret the unwritten rules with ease; however, for ASD individuals, these rules can be tricky, confusing, and not easily understood. Take, for instance, the unwritten rules of selecting a seat in the prison "chow hall." Those rules are very clear to the general population of inmates, but an inmate with ASD could easily mistake a previous friendly encounter as an invitation to sit and eat with others. In a prison cafeteria, the unwritten inmate protocol dictates at which tables inmates can eat their meals. The tables are usually segregated by race, gang affiliation, religion, sex offenders, with the remaining tables available for those offenders who do not "fit" at any of the others. Prison dining halls are formidable and foreboding, absent the added pressures of finding a place to sit and eat; however, adding the factor of "seat selection" can be especially tense and unnerving, even for non-ASD inmates. This process may become so stressful and difficult to endure, it may lead to some inmates, especially those with ASD, to forgo partaking in meals in the prison dining room, forcing them to rely solely on foods and snacks purchased in the commissary.

Few inmates with ASD have the awareness of their associated behaviors and characteristics, and others may easily mistake these behaviors as disrespectful and rude. Respect is a cardinal rule among inmates. Inmates with ASD are at a significant disadvantage compared to other "neurotypical" inmates. Misinterpreting nonverbal cues, lack of eye contact, social inappropriateness, absence of filters during conversations, lack of empathetic responses in serious situations, and laughing and smiling at inappropriate times can easily be interpreted by other inmates as a sign of disrespect. Inmates need to demonstrate to others that they will not tolerate disrespect, lest they lose credibility among peers. When they are met with disrespect, they often respond to the offender with threats of physical harm or worse.

Page 6 – Defendant's Sentencing Memorandum

> It is easy to play out how an ASD offender could become the subject of an assault, physical or sexual; be taken advantage of financially; or need a special housing arrangement to provide a safe environment. There are no statistics readily available, but we feel that based on the challenges ASD offenders face in prison that they typically will face multiple events in the Special Housing Unit for disciplinary issues or for their own protection. This leads to isolation, depression, and additional management concerns for the facility. Inmates with ASD may also become what we sometimes refer to as a "cave dweller." As a result of being bullied, ostracized, or threatened, while experiencing acute anxiety and living in a heightened state of fear, ASD inmates may choose to refrain from nonmandated activities and isolate themselves within their prison cell.
>
> In the United Kingdom, the Feltham Young Offenders Institution has been described as "autism-friendly." They house male offenders from ages 15–21. They instituted a thorough screening process designed to identify ASD offenders. A team of psychologists develops a behavioral management plan that is shared with all staff, including the correctional officers, who are likely to interact with autistic offenders the most. This approach is nonexistent in the federal correctional system in the United States.
>
> Presenting a declaration to the court and describing how a term of incarceration will be carried out is an important tool in sentence mitigation. While a psychologist can speak about a particular diagnosis and behavior, a BOP expert can provide the court a real-life view of how ill-equipped the BOP is at managing ASD inmates. We do not see the BOP changing its approach soon, and until they do, courts need to be educated to the realities of the unequal prison experience for defendants with ASD.
>
> The conclusions and statements contained in the article are based on our own experiences working on cases as consultants and as administrators in the BOP.[1]

In conclusion, Mr. Houghton requests a 495-month sentence with credit for time served to run fully concurrent with Lane County Circuit Court Case No. 24CR31533, based on the

---

[1] Maureen Baird, Walter Allen Pavlo, Jr., & Janet Perdue, *Autism and the Prison Experience*, Am. Bar Assoc. Criminal Justice Magazine (Oct 1, 2003), available at https://www.americanbar.org/groups/criminal_justice/resources/magazine/2023-fall/autism-prison-experience/.

Page 7 – Defendant's Sentencing Memorandum

foregoing, letters in support of Mr. Houghton, the information provided in the PSR, and the parties' joint recommendation.

Further, it is anticipated that Mr. Houghton will ask the Court to recommend the following three BOP placements:

1. Sandstone FCI (in Minnesota) for family visits.

2. USP/FCI Tucson (in Arizona) for sex offender program.

3. FCI Englewood (in Colorado).

Respectfully submitted: May 28, 2025.

*s/Kurt David Hermansen*
Kurt David Hermansen
Supervisory Assistant Federal Public Defender

Page 8 – Defendant's Sentencing Memorandum